KIMBALL, The ANNA. See Case No. 404.
KIMBALL, The IDDO. See Case No. 7,000.
KIMBARK (HALL v.). See Case No. 5,938.
KIMBER (LITTLE GUNNELL CO. v.). See Case No. 8,402.

---

## Case No. 7,777.

### KIMBERLY et al. v. BUTLER.

[16 Pittsb. Leg. J. 11; 2 Balt. Law Trans. 276; 1 Chi. Leg. News. 245; 3 Am. Law Rev. 777. [1]]

Circuit Court, D. Maryland. 1869.

MEMBER OF CONGRESS — IMMUNITY FROM ARREST.

[1. The privilege of members of congress to immunity from arrest under the constitution does not extend to privilege from summons in a civil suit. The exemption is from arrest with a view to imprisonment.]

[2. In an action against the commanding officer of a military post for money unlawfully exacted by him of the plaintiff, the bill of particulars filed with the declaration does not state any fact from which it can be inferred that the money was paid to the defendant; on the contrary, the pleadings show that the money was paid to the provost marshal. On demurrer the bill of particulars was held bad.]

[2] [This case. removed into this court from the superior court of Baltimore city, in an action of assumpsit, brought [by Kimberly & Bro.] to recover from the defendant [Benjamin F.] Butler, money illegally exacted by him as rent from the plaintiff, while he was commandant at Fortress Monroe, during the late war.

[The defendant pleads: (1) His privilege from arrest as a member of congress under the constitution. (2) The statute of limitations, prescribed by congress, against the plaintiff's demand, because suit was not brought within two years from the date of the wrongs complained of. (3) General issue

[1] [3 Am. Law Rev. 777, contains only a partial report.]
[2] [From 2 Balt. Law Trans. 276.]

of non assumpsit. To the plea of privilege in abatement, the plaintiff demurred, which raised the question of the application of that mode of defence.

[After some preliminary debate between counsel, Mr. Cushing said that Mr. Addison merely suggested some matters of legal evasion, and left him to open.

[The Chief Justice said that. a; M'. Add; on had waived the privilege, he must throw himself on the indulgence of the counsel. Whereupon Mr. Addison (resuming) read from the English law to sustain the power of the court to issue summons and to implead members of parliament, and then, leaving the common law, came to the statute laws of the United States. The great aim that the constitution had in view was, that members of congress should be protected in going to and returning from their duties.

[Mr. Brent referred to the following authorities in regard to the question whether this action can be brought at the common law: Fortes. 161; Bridgeman's Case; Pitt's Case in Comyn, 444; [McKenna v. Fisk] 1 How. [42 U. S.] 248; Mitchell v. Harmony [13 How. (54 U. S.) 115]; Chit. Pl. 477; 2 Saund. 209b.

[Mr. Cushing, in reply, said that he would like to have heard something about the constitution, but had been entertained with questions of privilege in England, without any apparent connection in this case. He declared that he abjured all doctrines and authority of common law and parliamentary precedents, and, throwing aside all questions of construction of a certain word or words, would come to the questions directly at issue here. He referred to the removal of the cause to this court under the acts of congress, and argued that the transfer might take place even after trial and judgment, at any time before execution. Under these acts they have the right to re-try the cause in the circuit court of the United States, as if it commenced in that court; and as to the state court, this court sat as its appellate tribunal. He said that they were now dealing with federal jurisdiction conferred by acts of congress, and none other. He referred to the last edition of Chitty on Pleading in regard to the question of the plea in abatement. The constitution should be read neither in a slavish spirit, nor too loosely, but read carefully to find out its true meaning. The letter of the constitution and the surrounding circumstances of the case must be taken into consideration in relation to the meaning of the word "arrest." The only three published digests of the laws of the United States (1 Pascal. Comm. Const. U. S. p. 68; Abbott's National Digest; and Brightly's Digest) all concur that there is no distinction as to privilege between writs of summons and capias. And they all maintain "that members of congress are privileged from arrest while in attendance upon their public duties." A member of congress shall not be diverted

from his official duties to attend to lawsuits —waylaid, it may be, seized in the cars, and then be subjected to a process that will compel him to appear in court. All distinction between capias and summons is extinct, and as the law renders representatives free from the one, it does also from the other. Is a judge subject to arrest when on the bench or in going to or coming from the court of justice? He argued that the people of Massachusetts had the right to demand that their representative should be allowed to pass to and from the seat of government, and he was defending their rights, not those of General Butler.

[Mr. Brent replied in an able argument, in which he reviewed the authorities, both English and American, planting himself not alone on the meaning of the word "arrest," but showing the judicial construction of the constitutional exemption in favor of members of congress as settled by the English decisions and the American authorities, both state and federal. We regret that our limits forbid a fuller report of the able arguments of counsel.

[THE COURT, through the Chief Justice, announced that they were not ready to pronounce formally their opinion on the demurrer to the plea of privilege relied on by the defendant; that the court would do so in the morning; that meantime the demurrer might be considered as sustained, and the case could proceed under the pleadings before the jury.

[The defendant Butler then pleaded the statute of limitations of two years under the act of congress. To this, the plaintiffs demurred. The demurrer without argument was overruled.

[The plaintiffs then replied specially, alleging that the act of congress applied only to cases ex delicto. and not like this to a suit ex contractu, and that the defendant was a non-resident of Maryland, and could not be sooner served with process. Gen. Butler, the defendant, then proceeded to address the court.][3]

THE COURT gave his opinion on the demurrer to the plea of privilege set up by defendant. He recited the facts of the case, and said that the demurrer presented the question whether service of summons is an arrest within the meaning of the constitution. He could find in the authorities no case closely analogous to the question before the court, either in principle or in fact.

Mr. Justice WASHINGTON held that a suitor in the court was not privileged from the service of a summons.

CHASE, Circuit Justice. The primary intent of the clause of the constitution was exemption from civil arrest. The question before us, therefore, is the meaning of "arrest." If the privilege of exemption from arrest extends to exemption from summons, it extends

---

[3] [From 2 Balt. Law Trans. 276.]

equally to exemption from every other mode of commencing a suit. We think that the exemption is exemption from arrest with a view to imprisonment, and nothing else. In the case before us the representative proceeded on his way, as usual, and was simply called to answer to a summons. The demurrer to the plea of privilege is therefore sustained.

Mr. Brent proceeded to argue the question of the demurrer filed by the defence to the replication of the plaintiff. We (the defendants) have filed a special replication to the plea. The argument on the other side is, that passing by the question on this plea, the whole question turns upon the demurrer. The bill of particulars discloses the fact, that the rent was received by the provost marshal and not by himself (Butler), and that Butler gave the order to the provost marshal. We hold that this order made the provost marshal the agent of General Butler. The money was paid into the hands of Butler's private agent, although he was clothed with the title of provost marshal, and the question is, whether there can be shown an authority to General Butler to give such an order. This is the question we desire to present to the jury.

The plea is, that in May, General Butler having ordered this money to be paid, there is no cause of action in this case; that it was merely a license given by the commanding officers to use this building. General Wood, the superior officer before Butler, endorsed the paper carefully in these words: "Approved, under express conditions that this building shall be removed at any time when required by the officer in command at Fortress Monroe, and if not removed, he shall have power to pull it down without cost to the United States."

The question we desire to have tried is, whether General Butler is not responsible for this money, having given the order. He simply pleads that the cause of action did not accrue within two years. There is no special plea in this case that he did it under the authority of the President, or under color of authority from the President.

Mr. Cushing said that the removal of the case to this court was made by the express power given by the act of 1866. Mr. Cushing said that he proposed to respond to Mr. Brent in the fewest possible words. The most of what he said was irrelevant. He (Mr. C.) assumes that the acts of congress are compatible with the constitution of the United States. Instead of wandering off into the infinite vague of imagining questions, he would confine himself to what in his opinion was the true issue presented by this demurrer. The whole case of the plaintiff avers that the money never came into the hands of the defendant. In his opinion, there is no controversy of fact in this case to go to the jury; it is law. In order that an action of assumpsit may be brought, all the authorities are to the point that it must be shown that money has actually come into the possession of the

defendant. He called the attention of the court to the surrounding circumstances. There was war, in fact, at the time of these transactions. The general in command was a general in the field. There were massed at that spot about 45,000 men. The place was a fortress, a military reservation of the United States. It was a place of arms—in time of war—and was subject to such regulations of police as the commanding general thought proper to prescribe. Is it the law of the land that the President gives specific commands to the interior of a fortress of the United States? The commander has power to do those things that conform to the commands of the President and of the law. And he assumed that in the most superficial view of the question the commanding general had the right to do as he did. The authority is fully shown by the nature of his commission, but all inquiry here into such authority is precluded, unless brought within two years. The plaintiffs should have demurred to the plea. He denied that the plaintiffs can go beyond the bill of particulars into questions of fact.

The Chief Justice, in deciding on the demurrer, said:

In this case it is charged that the defendant has received certain money which in equity belongs to the plaintiffs. This was a general charge. The defendant has replied by pleading the statute of limitation of two years. He is authorized, if they come within the 1st section of the act of 1863 or 1st section of the act of 1866. To the plea under these statutes, the plaintiff has replied that he should not be debarred of his rights, because neither of the facts arose or was done in two years. To this the defendant has demurred generally. For the present we will hold that the plea of the statute of limitation is bad, because the demurrer admits that none of the facts on which the plea was based exist. The question before us is, whether upon this declaration a case is made that can go to a jury? What is important to be stated is that the defendant received the money of the plaintiff. If that statement is made in the declaration then it is good.

The first question is, to whom was it paid? It was paid to the provost marshal, Cassell, who collected it. It is not shown that it was paid to any one else, and we are asked to infer that it was paid to the defendant. We have not been referred to either fact or law to sustain this demand. We have looked into the law relating to provost marshal. The acts provide that the provost marshal general shall make rules for his subordinates, etc., and perform such other duties as the president may prescribe. We cannot shut our eyes to the fact that the provost marshal is subordinate to the provost marshal general, and he should make him account for moneys. But we are constrained to come to the conclusion that money paid to the provost marshal is not money paid to any other officer or superior. We say the bill of particulars does not state

any fact from which we can infer that money was paid to the defendant. The demurrer will of course be sustained.

Mr. Brent offered to amend bill of particulars, which was objected to, but THE COURT allowed the motion to amend. This opens any plea that may be filed at any time, and gives the defendant thirty days to answer. Costs of the term to be paid by the plaintiffs, and case continued.